


Douglas B. Lipsky

420 Lexington Avenue, Suite 1830
New York, New York 10170
Main: 212.392.4772
Direct: 212.444.1024
doug@lipskylowe.com

www.lipskylowe.com

February 28, 2024

VIA ECF
The Honorable Stewart D. Aaron, U.S.M.J.
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re: Shiwpaul et al. v. Al-Boro Security, Inc. d/b/a Alboro National Security, Case No.: 1:23-cv-08001 (SDA)

Dear Magistrate Judge Aaron:

This firm represents Plaintiffs Radica Shiwpaul and Xzavier Shiwpaul ("Plaintiffs") in this Fair Labor Standards Act and New York Labor Law matter. We submit this letter, on behalf of all parties, seeking the Court's approval of the settlement agreement under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and *Wolinsky v. Scholastic Inc.*, No. 11-cv-5917 (JMF), 2012 U.S. Dist. LEXIS 93918 (S.D.N.Y. July 5, 2012).

I. Summary of Plaintiffs' Claims and Damages

A. Overview of Defendant's Business and Plaintiffs' Duties

Defendant is a security and investigative service company providing security services throughout New York. Defendant employed Plaintiffs as security officers. As security officers, Plaintiffs' primary duties were inspecting and patrolling the premises, monitoring property entrance, and maintaining the security of the property they were assigned to. Plaintiffs allege that their job duties required them to stand on their feet for at least 8 hours per day Plaintiffs, in performing these duties, allege that they spent more than 25% of their time performing manual labor.

B. Days and Hours Worked

a. Plaintiff Radica

Throughout her employment, it is alleged that Plaintiff Radica regularly worked more than 40 hours in a week. It is alleged that from late 2016 to April 2020, she worked five to seven days a week, working at least 16 hour per day and between 80 to 112 hours per week. It is alleged that from April 2020 to July 25, 2023, she worked three to five days a week, working at least 8 to 16 hours per day, and between 24 to 80 hours per week.






b. Plaintiff Xzavier

It is alleged that from June 2018 to September 6, 2018, Plaintiff Xzavier worked four days per week, working two 16 hour shifts and two 8 hour shifts, totaling at least 48 hours per week. It is alleged that from September 7, 2018 to February 2019, he worked three days per week, working two 8 hour shifts and one 16 hours shifts, averaging at least 32 hours per week. And from February 2019 to January 7, 2022, he worked four days per week, working at least 48 hours per week.

C. Untimely Payment

Throughout their employment, Defendant paid Plaintiffs their regular and overtime wages every two weeks, rather than every week, thereby paying them untimely under the FLSA and Labor Law. Since Defendant employed Plaintiffs in a manual labor position, Defendant was required to pay them their wages every week.

D. Unpaid Overtime

It is alleged that Plaintiffs regularly worked more than 40 hours per week throughout their employment. Despite regularly working over 40 hours per week, and Plaintiffs allege that Defendant failed to pay Plaintiffs 1.5 times their regular rate of pay for their overtime hours. Plaintiffs allege that Defendant paid Plaintiffs their hourly rate when they worked more than 40 hours, violating the FLSA and Labor Law.

E. Plaintiffs' Estimated Damages

Based on the alleged employment policies, the hours worked and compensation received, Plaintiffs calculate that they are owed $324,779.48 under their FLSA and Labor Law Claims: $296,558.08 (Plaintiff Radica's damages) + $28,221.40 (Plaintiff Xzavier's damages):

- Plaintiff Radica: $115,038.00 in unpaid overtime; $19,150.00 in untimely wages; $115,038.00 in liquidated damages; and $47,332.08 in prejudgment interest at 9.0% per annum on her unpaid wages.
- Plaintiff Xzavier: $8,948.00 in unpaid overtime; $7,800.00 in untimely wages; $8,948.00 in liquidated damages; and $2,525.40 in prejudgment interest at 9.0% *per annum* on his unpaid wages.

Accordingly, Plaintiffs' total compensatory damages equal $123,986.00, without liquidated damages and interest: $115,038.00 (Plaintiff Radica's compensatory damages) + $8,984.00 (Plaintiff Xzavier's compensatory damages).

II. Procedural and Settlement History

On September 11, 2023, Plaintiffs filed their Complaint and, on December 22, 2023, filed their Amended Complaint asserting the following claims: failure to pay overtime premium pay under the FLSA and Labor Law and failure to timely pay them their wages under the Labor Law.






On January 4, 2024, the Court scheduled the parties to participate in a settlement conference. On January 22, the parties participated in a second settlement conference with this Court in which the parties reached an agreement to settle this matter for $6,500.00. This agreement was then memorialized in the February 6, 2024 Settlement Agreement.

III. Summary of Settlement Terms

Plaintiffs have agreed to resolve their claims for $6,500.00: $1,856.00 payable to Plaintiff Radica; $2,165.33 payable to Plaintiff Xzavier; and $2,478.67 payable to their counsel Lipsky Lowe, $2,010.67 for their fees, equaling one-third of the settlement net of expenses, and $468.00 payable to their counsel for expenses.[1] Payment will be made within 10 days of the Court approving the Agreement, assuming it does. In consideration and exchange for this Settlement, the Plaintiffs agree to release the Defendant for all wage and hour claims.[2] To date, there are no unresolved disputes.

IV. Defendant's Defenses

Defendant maintains that Plaintiffs' job duties consisted of performing security services at various construction sites due to guidelines set forth by the New York State Department of Buildings and the New York State Fire Department which require construction sites over a certain square footage to employ a security guard onsite. Plaintiffs' job duties required them to sit at a security booth approximately 85% of the time. The rest of the 15% of their job duties required them to survey the construction site to observe certain activity which is why they were required to possess the above-referenced licenses. Defendant maintains that Plaintiffs were not engaged in manual labor more than 25% of the time during any given shift and are not manual workers as defined by the FLSA.

Defendant disputes that Plaintiffs worked over 40 hours per week and that Plaintiffs are owed overtime. Defendant is in possession of timesheets and call logs that demonstrate that Plaintiffs were compensated for any hours worked and for any overtime due and owing.

V. The Settlement Agreement Should Be Approved As It is Fair and Reasonable Under the Circumstances and Complies with the Second Circuit's Decision in *Cheeks v. Freeport Pancake House, Inc.*

A. The Settlement Agreement is Fair and Reasonable.

"Generally, there is a strong presumption in favor of finding a settlement fair, because the Court, is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotation marks omitted). A court should consider the totality of circumstances to determine whether the proposed settlement is fair and reasonable. This includes at least five factors: (1) the complexity, expense and likely

---

[1] Settlement Agreement ¶ 4(a)-(d), Exhibit A.
[2] *Id.* ¶ 3.





duration of litigation; (2) the stage of the proceedings; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of defendants to withstand a larger judgment; and (6) the range of reasonableness in light of the best possible recovery and all the risks of litigation. *Alvarez v. Sterling Portfolio Inv. L.P.*, No. 1:16-cv-5337 (CBA)(VMS), 2017 U.S. Dist. Lexis 206043, at *25 (E.D.N.Y. Dec. 13, 2017); *Wolinsky v. Scholastic Inc.*, No. 11-cv-5917 (JMF), 2012 U.S. Dist. LEXIS 93918, at *4-5 (S.D.N.Y. July 5, 2012) (citing *Medley v. Am. Cancer Soc.*, No. 1:10-cv-3214 (BSJ), 2010 U.S. Dist. LEXIS 75098, at *3 (S.D.N.Y. July 23, 2010)).

1. The settlement is reasonable and fair in view of the case's complexity, expense and the duration of the litigation.

While certain parts of this FLSA matter are not highly complex, serious factual questions exist that would require heavy litigation. The parties do not agree on the basic facts, including the hours Plaintiffs worked. While the parties reached an agreement before any formal discovery occurred, if this case were to proceed, the parties would be headed to trial, which is both time consuming and costly. Without this Settlement, both parties would need to spend significant time and resources to prepare for trial, including meeting with and preparing Plaintiffs for trial testimony, preparing trial exhibits, preparing motions *in limine*, preparing pre-trial briefing, drafting jury instructions, *voir dire*, and a verdict form, preparing opening statements, presenting the case to a jury, preparing summation, presenting the issue of liquidated damages to the Court for a decision, likely post-trial motions practice, and possible appeal.

In short, the anticipated burdens and expenses on both parties would be significant. This factor favors approving the settlement. *See Marshall v. Deutsche Post DHL*, 1:13-cv-1471 (RJD) (JO), 2015 U.S. Dist. Lexis 125869, at *12 (E.D.N.Y. Sept. 21, 2015) (finding that costly litigation favors approving settlement).

2. The settlement is reasonable and fair considering the stage of the proceedings.

The parties have participated in meaningful settlement discussions and exchanged informal discovery, allowing them to adequately evaluate the strengths and weaknesses of their respective claims and defenses. This favors approving the settlement. *See Alvarez v. Sterling Portfolio Inv. L.P.*, No. 1:16-cv-5337 (CBA)(VMS), 2017 U.S. Dist. Lexis 206043, at *8 (E.D.N.Y. Dec. 13, 2017) (approving settlement where discovery was incomplete but the parties had sufficient information to analyze the case); *see also In re Glob. Crossing Sec. & ERISA Litig.*, No. 02-md-1472 (GEL), 2004 U.S. Dist. LEXIS 23946, at *75 (S.D.N.Y. Nov. 23, 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims").

3. The settlement is reasonable and fair considering the risks of establishing liability and damages.

The biggest risk in Plaintiffs' case is proving the hours they worked – a hotly contested issue. But the settlement avoids this risk. It is accordingly uncertain whether, or






how much, they would recover at trial. This factor, therefore, favors approval of the settlement. *See Marshall*, 2015 U.S. Dist. Lexis 125869, at *13 (explaining because the case was not a "slam dunk" these factors favor approval); *Martinez v. AKN Fabrics Inc.*, No. 16-cv-4242 (HBP), 2017 U.S. Dist. LEXIS 167929, at *6 (S.D.N.Y. Oct. 11, 2017) (explaining because "whether and how much [plaintiff] would recover at trial is far from certain," these factors favor approval);

4. The settlement is reasonable and fair considering Defendant's ability to withstand a larger judgment.

Defendant has not stated whether it could withstand a greater judgment. This factor is, at best, neutral.

5. The settlement is reasonable and fair considering Plaintiffs' best possible recovery and the litigation risks.

Plaintiffs calculate their total recovery for their wage and hour claims to be, excluding interest and liquidated damages, $123,986.00: $115,038.00 for Plaintiff Radica and $8,984.00 for Plaintiff Xzavier. With receiving $6,500.00 in the Settlement, Plaintiffs are receiving a small fraction of their claimed damages. This is largely because of Plaintiffs' desire to resolve this case now and the overwhelming weight of Defendant's time records, which if accurate, would rebut their claims. However, approval is still appropriate even with Plaintiffs receiving a fraction of their claimed damages. *See Zorn-Hill v. A2B Taxi LLC*, 2020 U.S. Dist. LEXIS 170608, at (S.D.N.Y. Sept. 17, 2020) (approving a settlement amount representing 12.5% of the plaintiff's total recovery); *Sanchez v. Alan's R E 99 Cents & Up Inc.*, 2018 U.S. Dist. LEXIS 70647, at *9 (E.D.N.Y. Apr. 24, 2018) (approving settlement that provides for 20% of the claimed damages).

B. The Agreement Is the Product of Arm's-Length Settlement Negotiations.

The parties engaged in good faith, arm's length negotiation in reaching this Settlement. Counsel for both parties, who are well-versed in this legal area, negotiated settlement terms after informal discovery and participating in two settlement conferences with this Court. These factors favor approval. *See Charles v. Op. Access Corp.*, No. 16-cv-6868 (KAM) (JO), 2020 U.S. Dist. LEXIS 45633, at *11 (E.D.N.Y. Mar. 13, 2020) ("[s]ettlement reached as a result of arms-length negotiations with the assistance of a mediator or a judge enjoy a presumption of procedural fairness"); *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 1:09-cv-486 (ETB), 2012 U.S. Dist. Lexis 144446, at * 7-8 (E.D.N.Y. Oct. 4, 2012) (approving settlement that was reached following arm's-length negotiations and with a mediator's assistance).

C. The Agreement Complies with the Second Circuit's Decision in *Cheeks v. Freeport Pancake House*.

In August 2015, the Second Circuit resolved an arguably unsettled issue: parties cannot privately settle FLSA claims without either the approval of the district court or the Department of Labor. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d






Cir. 2015). The Court also explained in *dicta* when an FLSA settlement is valid. Namely, it questioned the validity of agreements that contain confidentiality provisions, single-sided general releases and attorneys' fees that go beyond a certain percentage. *Id*. None of those issues are present in the Agreement.

1. The Agreement complies with *Cheeks* since it is publicly filed.

The Agreement does not contain a confidentiality provision and it is publicly available, having been filed on the CM/ECF system with this motion. This concern thus does not exist, favoring approval.

2. The Agreement complies with *Cheeks* since it contains a limited release.

The Agreement's release is limited to the wage and hour claims asserted in this action.[3] This favors approval. *See Gomez v. Midwood Lumber & Millwork, Inc.*, No. 1:17-cv-3064 (KAM)(JO), 2018 U.S. Dist. Lexis 101019, at * 15 (E.D.N.Y. June 17, 2018) (approving settlement agreement when the release was limited to the asserted wage and hour claims); *Wiles v. Logan Staffing Sols. Inc.*, No. 18-cv-9953 (RA), 2020 U.S. Dist. LEXIS 36485, at *4 (S.D.N.Y. Mar. 2, 2020).

VI. The Court Should Approve Plaintiffs' Counsel Fees and Expenses, As the Amounts Are Reasonable

A. Counsel's Fees of One-Third of The Settlement Is Reasonable and Regularly Approved.

Plaintiffs' Counsel shall receive, under the Agreement and subject to the Court's approval, $2,010.67 in fees, which is one-third of the $6,500.00 settlement[4] net of expenses, and $468.00 in expenses. Plaintiffs' Counsel seeks one-third in fees also pursuant to the contingency fee agreement with Plaintiffs.

This amount is reasonable as contingency fees of one-third in the FLSA context are routinely approved. *See e.g., Sanchez v. Alan's R E 99 Cents & Up Inc.*, No. 16-cv-1881 (CBA)(LB), 2018 U.S. Dist. LEXIS 70647, at *13 (E.D.N.Y. Apr. 24, 2018) (approving one-third fee request in FLSA case); *Emiliano Nieto Zepeda v. Baggio, Ltd.*, No. 1:17-cv-2290 (VB), 2017 U.S. Dist. LEXIS 143332, at *2 (S.D.N.Y. Sept. 1, 2017) (approving one-third request fee request). And it remains reasonable for counsel to receive one-third of the funds even when the Plaintiffs are not receiving 100% of their claimed damages. *See Emiliano Nieto Zepeda*, 2017 U.S. Dist. LEXIS 143332, at *2 (approving one-third request when Plaintiffs is receiving 50% of her claimed damages).

Also, this firm assumed a meaningful financial risk when agreeing to represent Plaintiffs under this contingency fee arrangement. We took on the case with no guarantee if and when there would be a resolution, while investing our time and effort and advancing

---

[3] *Id.* ¶ 3.
[4] *Id.* ¶ 2.





costs – all with no guarantee of any compensation. Indeed, in unsuccessful cases, this firm does not recover anything despite investing hundreds of hours and thousands in expenses. This assumption of risk is unique to the plaintiff's bar and further favors approving the near-one-third contingency fee. *See Garcia*, 2012 U.S. Dist. Lexis 144446, at *20; *Campos v. Goode*, No. 1:10-cv-224 (DF), 2011 U.S. Dist. Lexis 22959, at *19 (S.D.N.Y. March 4, 2011).

B. Counsel's Fee Request Is Further Reasonable Considering Their Hourly Rates and Hours Expended.

Lipsky Lowe has expended more than 45.35 hours, equaling $11,132.50 in fees: 6.3 hours for Douglas Lipsky (partner) at $475 per hour, totaling $2,992.50; 23.3 hours for Bayron Flores (junior associate) at $275 per hour, totaling $6,407.50; and 15.75 hours for LiAnne Chan at $110 per hour, respectively, totaling $1,732.50.[5] These hours and rates are reasonable.

1. Counsel's fee request is reasonable considering the requested hourly rates, their experience and previously approved rates

Counsel's hourly rates are reasonable. A reasonable hourly rate is one which a "paying client would be willing to pay." *Arbor Hill Concerned Citizens of Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2007). To find a reasonable hourly rate, the Court must determine whether the requested rates are "in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Reiter v. MTA N.Y.C. Transit Auth*., 457 F.3d 224, 232 (2d Cir. 2006).

Plaintiffs request a rate of $475 for partner Douglas B. Lipsky, which is reasonable considering his background: he has practiced employment law for 20 years; he is a member of the New York State Bar Association, Wage and Hour Committee; he has presented on numerous issues, including presenting to the New York State Academy of Trial Lawyers on employment law and the FLSA; he was a contributing authority on a treatise on wage and hour litigation, Wage & Hour Collective and Class Litigation, ALM Law Journal Press (2012); prior to founding Lipsky Lowe, he was a Senior Associate at Seyfarth Shaw LLP in its employment practice group, which is consistently ranked as one of the top employment practice groups in the Country. Courts, recognizing this background, have approved this and comparable rates. *See Enriquez et al v. 189 Chrystie Street Partners, LP et al*, *21-11195* (S.D.N.Y.) (approving Lipsky at $475); *Ilyina v. Fantasy Lake Resort Inc., et al.*, 1:19-cv-4845 (JRC) (E.D.N.Y. May 4, 2023) (approving Lipsky at $450); *Karaisaridis v. Red Panda Asian Bistro Inc. et al*, 1:19-cv-03780-ENV-VMS (EDNY March 20, 2023) (approving Lipsky at $450); *Heath v. One of Kind Transport Inc, et al.*, 1:21-cv-06920 (BMC) (E.D.N.Y. Mar. 22, 2022) (approving Lipsky at $450).

Plaintiffs request an hourly rate of $275 for Bayron Flores-Tapia. He graduated in 2021 from Fordham University School of Law and has since been working as a junior associate at Lipsky Lowe. During law school, he interned with the New York Legal

[5] Contemporaneous and near contemporaneous time records, Exhibit B.






Assistant Group's Legal Clinic for Pro Se Litigants at the Southern District of New York, providing direct limited scope legal assistance to federal pro se litigants in matters related to labor and employment. As a junior associate at Lipsky Lowe, he has worked exclusively on employment law matters. Courts in this District have recently approved his hourly rate of $275. *See Portillo v. Underhill Food Corp et al*, 1:20-cv-05286 (WFK-JRC) (E.D.N.Y. Nov. 02, 2020) (approving Mr. Flores Tapia's hourly rate of $275 in an FLSA matter); *Raiter Et Al V. Dessert Palace Bose Inc. Et Al*, 1:21-cv-04410 (CLP) (E.D.N.Y. Aug. 4, 2022) (same); *llyina v. Fantasy Lake Resort Inc., et al.*, 1:19-cv-4845 (JRC) (E.D.N.Y. May 4, 2023) (same).

The requested rate of $110 for the paralegal on the case, Ms. LiAnne Chan, is reasonable. Ms. Chan has worked as a paralegal for almost 15 years, with 8 of those years specific to employment law. Her requested rate is consistent with what other courts have approved. *See llyina*, 1:19-cv-4845 (JRC) (approving Ms. Chan's hourly rate of $110 in an FLSA matter). *Lazaro v. Best Fish Mkt. Corp.*, 2022 U.S. Dist. LEXIS 17015, at *5 (E.D.N.Y. Jan. 29, 2022) (noting that a paralegal rate of $125 was "within the parameters in this district"); *Perez-Ramos v. St. George Holding Corp.*, No. 18-cv-1929(KAM)(JO), 2020 U.S. Dist. LEXIS 13256, at *10 (E.D.N.Y. Jan. 27, 2020) (approving as reasonable a $100 hourly rate for a paralegal).

2. Counsel's fee request is further reasonable considering they regularly represent clients who pay them rates that are greater than the requested rates.

As the redacted engagement letters confirm, Plaintiffs' Counsel often represents individuals and businesses who pay them hourly rates that exceed the requested rates: clients regularly agree to pay Mr. Lipsky $600 or more per hour and Mr. Flores-Tapia $300 per hour.[6] This further underscores the reasonableness of the requested rates, as it reflects the market rates for attorneys of their experience. *See Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) (explaining "the range of rates that Plaintiffs' counsel actually charge their clients . . . is obviously strong evidence of what the market will bear").

3. Counsel's fee request is further reasonable considering hourly rates are not stagnant.

These rates are further reasonable when considering hourly rates are not stagnant. *Reiter v. MTA N.Y. City Transit Auth*.457 F.3d 224, 232 (2d Cir 2006) ("[In fee applications], rates used by the court should be current rather than historic.") Rates generally increase each year, resulting in the market rate in 2024 being greater than what it was in 2014. The average attorney hourly rates in New York, in fact, increased by 3% in 2023 and by 4.8% for AMLaw 100 firms.[7] It accordingly follows that the hourly rates that

---

[6] Engagement Letters (client names and matters have been redacted), Exhibit C.

[7] https://www.attorneyatwork.com/solo-and-small-firm-lawyer-hourly-rates/;%20https:/www.legaldive.com/news/am-law-100-hourly-rates-largest-law-firms-brightflag-analysis/702164/






were approved in earlier years do not reflect what those rates would be in today's market for someone with the same experience.

Putting this in context and using the 3% increase rate, the $400 hourly rate that was recognized as reasonable in 2010 for a partner in *Luca v. Cty. of Nassau*, 698 F. Supp. 2d 296, 302 (E.D.N.Y. 2010) would be $568 in today's market.[8]

Rates also adjust with inflation. For example, that $400 hourly rate in *Luca*, equals $566.25 when adjusted for inflation.[9]

4. Counsel's fees are further reasonable considering the work done on this case.

Before filing the lawsuit, Counsel fully investigated the claims and potential defenses. After the lawsuit was filed, the parties completed meaningful informal discovery, engaged in significant settlement talks and participated in two settlement conferences with this Court.

5. Counsel's fees are further reasonable considering the division of labor between Partner and Associate

The work here was appropriately allocated between a partner, junior associate and paralegal. This case is therefore not the situation where a partner does all of the work and seeks to be compensated for associate-level work. This firm was, rather, able to allocate the most cost efficient resources to this case, while effectively representing the Plaintiffs.

C. Lipsky Lowe Are Entitled to Its Expenses

Lipsky Lowe is entitled to recover its costs in addition to its reasonable fees. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1-a), 663. These include reimbursement for, by way of example, filing fees, process servers, copying and postage. *See Marquez v. Erenler, Inc.*, No. 12-cv-8580 (GHW), 2014 U.S. Dist. LEXIS 159128, at *9 (S.D.N.Y. Nov. 10, 2014) (awarding filing and transcript fees, and process server expenses); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 624 (S.D.N.Y. 2012) (awarding expenses including filing fees and postage).

Here, Counsel is seeking $468.00 in expenses for the filing fee and process server fee.[10] Counsel should be reimbursed for them.

VII. Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the Agreement and award the requested attorneys' fees and expenses.

Respectfully submitted,
LIPSKY LOWE LLP

---

[8] $400 x 1.03^14=$568.

[9] https://www.bls.gov/data/inflation_calculator.htm

[10] Expense records, Exhibit D.






s/ Douglas B. Lipsky
Douglas B. Lipsky

CC: Defense Counsel (Via ECF)